# EXHIBIT A



MATTHEW J. FOGELMAN
EMAIL: MJF@FOGELMANLAWFIRM.COM

FOGELMAN & FOGELMAN

189 WELLS AVENUE, SUITE 302
NEWTON, MA 02459
PHONE: 617.393.7602 FAX: 617.505.1540

August 27, 2020

Plymouth County Superior Court
Civil Clerk's Office
52 Obery Street
Plymouth, MA 02630

Re:   <u>Stephen Brennan v. IQVIA Inc. and Jon Resnick Civil Complaint</u>

Dear Sir or Madam:

Enclosed please find a Complaint, Civil Action Cover sheet, and a check for $285.00 for the filing fee and summonses.

If you have any questions or concerns, please do not hesitate to contact me. Thank you for your attention to this matter.

Sincerely,

Matthew J. Fogelman

Enclosures

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

PLYMOUTH, ss.

| | |
|---|---|
| STEPHEN BRENNAN,<br><br>    Plaintiff,<br> v.<br><br>IQVIA INC. AND<br>JON RESNICK,<br><br>    Defendants. | Civil Action No.: |

## Introduction

This is a Complaint for damages arising from a violation of the <u>Fortune</u> doctrine and Wage Act violations suffered by Plaintiff Stephen Brennan. As a result of Defendants' actions, Plaintiff has suffered damages, including lost wages and benefits.

## Parties

1. Plaintiff Stephen Brennan ("Brennan") is an individual who resides at 45 Lyman Place, Bridgewater, Massachusetts.

2. Defendant IQVIA, Inc. ("IQVIA") is a corporation with a principal place of business located at 100 IMS Drive, Parsippany, New Jersey 07054.

3. Defendant Jon Resnick is the President of IQVIA. His business address is 100 IMS Drive, Parsippany, New Jersey 07054.

## Jurisdiction and Venue

4. Jurisdiction of this Court is lawful and proper as Plaintiff Brennan resides in Massachusetts and worked in Massachusetts during the relevant time period.

1

5. Venue in Plymouth County is lawful and proper as Plaintiff Brennan resides there and worked in Massachusetts and in Plymouth County during the relevant time period.

## Administrative Exhaustion

6. Pursuant to General Laws, chapter 140, § 150, Mr. Brennan has satisfied all prerequisites and conditions precedent necessary to entitle him to seek remedy against Defendant in this action.

7. On August 6, 2020, Mr. Brennan filed a Wage Complaint form with the Fair Labor Division of the Attorney General's Office for the non-payment of wages (including commissions), pursuant to G.L. c. 149, §§ 148, 148B and 150 and G.L. c. 151, §§ 1 and 20. The Attorney General's Office then issued an authorization for private suit allowing Mr. Brennan to proceed to court immediately against IQVIA on August 7, 2020.

## Facts Common to All Counts

8. Plaintiff Steve Brennan commenced his employment with IQVIA on July 16, 2018.

9. His position at IQVIA was Senior Director of Business Development within the IQVIA's Contract Sales and Medical Solutions team.

10. His base salary was $187,775.

11. Mr. Brennan performed well at his job.

12. In June 2019, Mr. Brennan began meeting with Supernus Pharmaceuticals ("Supernus"), a company that, at that time, had never done business with the Contract Sales and Medical Solutions division of IQVIA.

2

13. In August 2019, Mr. Brennan facilitated "peer to peer" leadership meetings between Supernus leadership and their counterparts at IQVIA.

14. This effort involved significant work for Mr. Brennan, including coordinating all calendars for both companies, briefing all IQVIA participants on Supernus, and scheduling follow-up meetings with the IQVIA participants to understand what was accomplished and address any outstanding issues to move the deal toward closure.

15. Mr. Brennan arranged, scheduled, and executed four onsite meetings with Supernus Sales Leaders, Medical Leaders, Sales Training Leaders, Marketing Leaders, and Operations Leaders at their headquarters in Rockville, Maryland.

16. These meetings involved coordinating both IQVIA and Supernus leaders' schedules and creating content in the form of slide decks and cost modeling for the project.

17. In August 2019, Mr. Brennan also set up reference meetings with current IQVIA customers so that Supernus leadership could interview them about their experience with IQVIA.

18. Once again, these meetings required a great deal of action on Mr. Brennan's part that went above and beyond the usual efforts of the Business Development team.

19. In November 2019, Supernus agreed verbally to move forward with a deal with IQVIA.

20. Steve DeVrieze, IQVIA Vice President of Business Development, asked Mr. Brennan to do a Case Study on the entire Supernus deal so that the rest of the team could learn from his work.

21. Mr. DeVrieze wanted Mr. Brennan to prepare the Case Study to showcase the Supernus deal to IQVIA's new general manger, Jaimie Thompson.

3

22. In January 2020, Mr. Brennan presented this Case Study at the IQVIA national meeting.

23. On May 14, 2020, Mr. Brennan was called by Rebecca Adams, IQVIA Senior Director of Human Resources, and told that he was being "restructured" out of the company.

24. Ms. Adams told Mr. Brennan that he was not being terminated for cause.

25. Mr. Brennan had never received any written or verbal warnings about his performance and was not on any performance improvement plan.

26. Mr. Brennan was the only member of the Business Development team that was terminated at that time.

27. The sudden termination came as the Supernus deal was imminent.

28. Shortly following the termination, Supernus closed two deals with IQVIA, valuing nearly 30 million dollars.

29. As Mr. Brennan was directly responsible for these two deals, he was owed a commission of $169,950.

30. As Supernus was a new customer of IQVIA, Mr. Brennan was owed an additional $5,000 for a "New Logo Bonus."

31. Thus, IQVIA owed Mr. Brennan a total of $174,950 as a result of his work on the Supernus deals.

32. Along with terminating Mr. Brennan shortly before the deals closed, IQVIA claims it no longer had to pay him these owed commissions and bonus.

33. Upon information and belief, IQVIA recruited two individuals to fill Mr. Brennan's position that would begin in August 2020.

34. There is no indication that Mr. Brennan's termination was a result of any "restructuring," as he was the only employee fired at the time and his position has since been filled.

35. After his termination, Mr. Brennan was unemployed for a period of time.

36. Mr. Brennan is currently employed and earns approximately $20,000 less than he was earning at IQVIA.

37. Mr. Resnick is the President of IQVIA and has personal liability for Wage Act violations pursuant to Massachusetts law.

### Count 1
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

38. Plaintiff incorporates and realleges the allegations in each of the preceding paragraphs as if fully set forth within this paragraph.

39. IQVIA owed Mr. Brennan commissions and a bonus based on the work he performed to close the Supernus deals.

40. The Fortune doctrine, laid forth in Fortune v. National Cash Register Co., 373 Mass. 96, 104-105 (1977), dictates that employees are entitled to commission payments when they are fired after their work is completed, but before the commission is paid and the reason for their firing is to cut off the commission.

41. In such cases, Massachusetts courts imply a covenant of good faith and fair dealing, treat the discharge as a breach of contract, and fix the remedy as an award to the employee of future compensation for the completed sale.

42. A valid, enforceable contract existed between Mr. Brennan and IQVIA.

43. Implied in the contract was a covenant of good faith and fair dealing.

44. By terminating Mr. Brennan's employment as previously detailed, the Defendant violated the Fortune doctrine and breached the covenant of good faith and fair dealing.

45. As a result of the Defendant's breach, Mr. Brennan has suffered significant damages, including the loss of salary, bonuses, commissions, and benefits he would have received after the close of the Supernus deals

## Count 2
## BREACH OF CONTRACT

46. Plaintiff incorporates and realleges the allegations in each of the preceding paragraphs as if fully set forth within this paragraph.

47. IQVIA owed Mr. Brennan commissions and a bonus based on the work he performed to close the Supernus deals.

48. The Fortune doctrine, laid forth in Fortune v. National Cash Register Co., 373 Mass. 96, 104-105 (1977), dictates that employees are entitled to commission payments when they are fired after their work is completed, but before the commission is paid and the reason for their firing is to cut off the commission.

49. In such cases, Massachusetts courts imply a covenant of good faith and fair dealing, treat the discharge as a breach of contract, and fix the remedy as an award to the employee of future compensation for the completed sale.

50. A valid, enforceable contract existed between Mr. Brennan and IQVIA.

51. By terminating Mr. Brennan's employment as previously detailed, the Defendant breached the covenant of good faith and fair dealing, and, consequently, breached the contract.

52. As a result of the Defendant's breach, Mr. Brennan has suffered significant damages, including the loss of salary, bonuses, commissions, and benefits he would have received after the close of the Supernus deals.

**Count 3**
**FAILURE TO PAY WAGES IN VIOLATION OF THE WAGE ACT, G.L. c. 149**

53. Plaintiff repeats the allegations set forth above as if fully contained herein.

54. The wages (in the form of commissions and a bonus) that IQVIA owes to Mr. Brennan were definitely determined and are due and payable.

55. IQVIA has failed to pay Mr. Brennan the wages owed to him.

56. The commission structure was clearly delineated in a written agreement and follows an easy, strict formula. Defendant violated the Wage Act by terminating Mr. Brennan and thereby failing to pay him commissions owed.

57. IQVIA and Mr. Resnick are jointly liable for Wage Act violations and damages.

**Prayers for Relief**

WHEREFORE, Plaintiff Steve Brennan respectfully requests that the Court grant him the following relief:

i. Enter judgment in his favor and against the Defendants on all counts of the complaint;

ii. Award damages to Plaintiff in an amount determined by the Court;

iii. Treble such amount as provided for in M.G.L. c. 149, § 150, and award interest, costs, and attorneys' fees to Plaintiff;

iv. Grant such other and further relief as the Court deems proper.

## Jury Demand

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

STEPHEN BRENNAN

By his attorneys,

Matthew J. Fogelman (BBO# 653916)
mjf@fogelmanlawfirm.com
Olivia L. Vehslage (BBO# 705961)
olv@fogelmanlawfirm.com
FOGELMAN LAW LLC
189 Wells Avenue, Suite 302
Newton, MA 02459
617-559-1530

Dated: August 27, 2020

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| PLAINTIFF(S): Stephen Brennan<br>ADDRESS: 45 Lyman Place, Bridgewater, Massachusetts | | COUNTY: Plymouth |
| | DEFENDANT(S): IQVIA Inc. and Jon Resnick | |
| ATTORNEY: Matthew Fogelman, Olivia Vehslage<br>ADDRESS: 189 Wells Avenue, Suite 302, Newton, MA 02459 | ADDRESS: 100 IMS Drive, Parsippany, New Jersey 07054 | |
| BBO: 653916, 705961 | | |

| CODE NO. | TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)<br>TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A99 | Other Contract/Business Action | F | ☒ YES ☐ NO |

*If "Other" please describe: Wage Act violation and Fortune Doctrine violation

Is there a claim under G.L. c. 93A?  ☐ YES  ☒ NO

Is this a class action under Mass. R. Civ. P. 23?  ☐ YES  ☒ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses .................................................. $
  2. Total doctor expenses ..................................................... $
  3. Total chiropractic expenses ............................................ $
  4. Total physical therapy expenses ..................................... $
  5. Total other expenses (describe below) ........................... $
     Subtotal (A): $
B. Documented lost wages and compensation to date ............ $ 174,950
C. Documented property damages to date ............................. $
D. Reasonably anticipated future medical and hospital expenses ... $
E. Reasonably anticipated lost wages .................................... $
F. Other documented items of damages (describe below) ....... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Plaintiff was terminated by Defendants to avoid paying him commissions and bonuses he was owed by Defendants
+ Wage Act violations

TOTAL (A-F): $ 174,950 +

**CONTRACT CLAIMS**
(attach additional sheets as necessary)
☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $

Signature of Attorney/ Unrepresented Plaintiff: X /s/ Matt F.   Date: 8-27-20

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**
I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X /s/ Matt F.   Date: 8-27-20

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

PLYMOUTH, ss.

| | |
|---|---|
| STEPHEN BRENNAN,<br><br>        Plaintiff,<br>v.<br><br>IQVIA INC. AND<br>JON RESNICK,<br><br>        Defendants. | Civil Action No.: |

## PLAINTIFF'S MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, Plaintiff hereby moves that the Court appoint Constable Robert Messina and/or an Associate Constable from his office, a disinterested party and of legal age, as special process server for the purpose of serving the Pleadings in this action.

Respectfully submitted
Stephen Brennan,
By his attorneys,

/s/ Matthew J. Fogelman

Matthew J. Fogelman (BBO# 653916)
mjf@fogelmanlawfirm.com
Olivia L. Vehslage (BBO# 705961)
olv@fogelmanlawfirm.com
FOGELMAN LAW LLC
189 Wells Avenue, Suite 302
Newton, MA 02459
617-559-1530

Dated: 8-27-20

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 2083CV00647 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Brennan, Stephen vs. IGVIA INC. et al | | Robert S. Creedon, Jr., Clerk of Courts |
| TO: Olivia Vehslage, Esq. Fogelman & Fogelman LLC 189 Wells Ave Suite 302 Newton, MA 02459 | | COURT NAME & ADDRESS Plymouth County Superior Court - Brockton 72 Belmont Street Brockton, MA 02301 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION — DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/30/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 12/29/2020 | |
| All motions under MRCP 12, 19, and 20 | 12/29/2020 | 01/28/2021 | 03/01/2021 |
| All motions under MRCP 15 | 12/29/2020 | 01/28/2021 | 03/01/2021 |
| All discovery requests and depositions served and non-expert depositions completed | 06/28/2021 | | |
| All motions under MRCP 56 | 07/27/2021 | 08/26/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/24/2021 |
| Case shall be resolved and judgment shall issue by | | | 08/31/2022 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.

Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to

| DATE ISSUED 08/31/2020 | ASSISTANT CLERK | PHONE |
|---|---|---|

Date/Time Printed: 08-31-2020 15:06:54

SCV026\ 08/2018

Case 1:20-cv-12230   Document 1-3   Filed 12/16/20   Page 14 of 14